STUDENT ROE, a Minor, by her Next
Friend and Natural Guardian, M. ROE

v.

COMMONWEALTH OF PENNSYLVA-
NIA, et al.

Civ. A. No. 85–1230.

United States District Court,
E.D. Pennsylvania.

June 27, 1986.

Doris Applebaum, in pro. per.

David M. Donaldson, Sr. Deputy Atty. Gen., Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

Plaintiff, a student in the Bensalem Township School District, raises various statutory and constitutional challenges to her exclusion from gifted education. Suit is brought *in propria persona* by her next friend and guardian, who apparently is an attorney licensed in Pennsylvania and admitted to practice before this court. The Commonwealth of Pennsylvania defendants have moved for judgment on the pleadings. Because I conclude that, taking as true all of plaintiff's allegations, and drawing therefrom all inferences favorable to her, plaintiff can prove no set of facts in support of her claim which would entitle her to relief, *see, e.g., Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir.1980), defendants' motion will be granted.

Count I of plaintiff's complaint alleges a plethora of violations of the Education of the Handicapped Act ("EHA"). 20 U.S.C. §§ 1400–1454. Plaintiff's argument as to why the EHA applies to her exclusion from gifted education is, at best, extraordinarily convoluted, difficult to explain and tangled into a veritable legal rat's nest. I shall do my best to unravel the snarl. Plaintiff's argument goes like this:

1. She is not handicapped.

2. The EHA should not apply to her. (It may seem as though I should stop here, but plaintiff continues.)

3. Pennsylvania extends to gifted students the same due process guarantees that it extends to handicapped students. *See* 22 Pa.Admin.Code §§ 13.21, 13.-31–.33.

4. Plaintiff then makes the quantum leap to conclude that all aspects of the EHA must be applied to a determination of her entitlement to gifted education. In support of this contention, plaintiff relies on a well-known legal maxim: "You must take the bitter with the sweet."

█ Having thus unraveled plaintiff's argument, I conclude that it is entirely without merit. Plaintiff concedes that, by its terms, the EHA applies only to handicapped children. *See* 20 U.S.C. §§ 1400(c), 1401(a)(1). Therefore, plaintiff's "bitter with the sweet" argument notwithstanding, the extent to which Pennsylvania chooses to apply the same procedural protections to its determinations regarding the placement of students in gifted and handicapped educational programs is, within constitutional limitations, *see infra* pp. 932–33

solely a matter of state law.[1] Accordingly, I will grant defendants' motion for judgment on the pleadings as to Count I of plaintiff's complaint.

Count II of plaintiff's complaint alleges that defendants denied her procedural due process. Plaintiff's allegations as to this claim are twofold. First, she alleges that gifted education is the preferred educational placement, and therefore that defendants violated her rights by placing her in regular education classes without prior notice and an opportunity to be heard. Second, she alleges that when she initiated due process proceedings to determine her eligibility for gifted education, the procedures employed by defendants were constitutionally defective.

A threshold issue in any due process inquiry is whether the plaintiff was deprived of a constitutionally protected interest. *E.g., Board of Regents v. Roth*, 408 U.S. 564, 569–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972). Plaintiff argues that because gifted education is the preferred educational assignment, she has both a property and a liberty interest in being placed in gifted education. I disagree.

■ Property interests are not created by the Constitution, but by independent sources, such as state law. *E.g., id.* at 577, 92 S.Ct. at 2709. As to placement in gifted education, Pennsylvania law provides as follows:

> Persons shall be assigned to a program for the gifted when they have an IQ of 130 or higher. A limited number of persons with IQ scores lower than 130 *may* be admitted to gifted programs when other educational criteria in the profile of the person strongly indicate gifted ability.

22 Pa.Admin.Code § 341.1 (emphasis added).

■ Assuming, without deciding, that this regulation creates a property interest in gifted education for students with IQs of 130 or higher, it does not confer such an interest upon plaintiff, as she does not allege that her IQ falls within the specified range.[2] To have a property interest in a benefit, a person must have "more than an abstract need or desire for it. . . . He must . . . have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Neither the provision in the regulation that select students with IQs under 130 may be admitted to gifted programs, nor, if such is the case, the fact that gifted education is the preferred educational assignment, creates in plaintiff a legitimate claim of entitlement to it. *See, e.g., id.* at 578, 92 S.Ct. at 2709–10 (discussing factors which would create a legitimate claim of entitlement); *see also Lisa H. v. State Board of Education*, 67 Pa.Commw. 350, 354–58, 447 A.2d 669, 672–74 (1982) (although all children in Pennsylvania have a property interest in participating in the educational process, only exceptional children have a right to an individualized level or quality of education), *aff'd mem.*, 502 Pa. 613, 467 A.2d 1127 (1983). Therefore, I conclude that plaintiff does not have a property interest in being placed in gifted education.

■ Plaintiff bases her argument that she has a liberty interest in being placed in gifted education on *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). In *Meyer*, the Court listed as a liberty interest the right "to acquire useful knowledge." *Id.* at 399, 43 S.Ct. at 626. Apparently, plaintiff believes that *Meyer* bestows upon her a liberty interest in being placed in gifted rather than regular education because gifted education would, in her opinion, expose her to a greater volume of

**1.** *Geis v. Board of Education*, 774 F.2d 575 (3d Cir.1985), is not to the contrary. In *Geis*, the court held that state standards of educational opportunity for handicapped students are incorporated into the EHA, and therefore enforceable in the federal courts. *Id.* at 579–81. However, because the FHA does not apply to gifted students, Pennsylvania's standards for gifted education are, *ipso facto*, not incorporated into the EHA and are matters of state law only. Therefore, *Geis* is inapposite to the present case.

**2.** An exhibit attached to plaintiff's complaint shows that she scored 121 on an IQ test.

useful knowledge. However, the *Meyer* Court was concerned with access to broad areas of knowledge, *see id.* at 399–403, 43 S.Ct. at 626–28, not with maximizing the volume of knowledge to which an individual is exposed. Thus, plaintiff's argument is spurious, as she has failed to identify, either in her complaint, her brief, or at oral argument, a single area of useful knowledge to which she has been denied access. Therefore, I conclude that defendants have not deprived plaintiff of a liberty interest by denying her placement in a program of gifted education.[3]

Count III of plaintiff's complaint alleges four equal protection and substantive due process violations. Summarized briefly, plaintiff challenges the creation by the Board of Education of the gifted student classification, the use of IQ scores to define mental giftedness, the fact that students with IQs of 130 or higher are placed in educational programs purportedly designed to maximize their potential, while students with IQs under 130 are not entitled to be placed in such programs, and the fact that only exceptional students, *i.e.,* those deemed gifted or handicapped, are legally entitled to be placed in the least restrictive educational environment.

■ Initially, I must determine the level of scrutiny to be applied to plaintiff's claims. Scrutiny more rigorous than the "rational relation" standard applies only if a suspect classification is used or a fundamental right is affected. *See, e.g., Vance v. Bradley,* 440 U.S. 93, 96–97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979) (equal protection); *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 124–25, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91 (1978) (substantive due process); *Roe v. Wade,* 410 U.S. 113, 155–

56, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973) (substantive due process). Plaintiff does not argue that defendants have used a suspect classification and she concedes that education is not a fundamental right under the United States Constitution. *See San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 33–35, 93 S.Ct. 1278, 1296–97, 36 L.Ed.2d 16 (1973).[4] However, she argues that two of her fundamental rights are infringed by her exclusion from gifted education: a liberty interest in acquiring useful knowledge, and a first amendment right to receive information and ideas. *See Kleindienst v. Mandel,* 408 U.S. 753, 762–63, 92 S.Ct. 2576, 2581–82, 33 L.Ed.2d 683 (1972). For the reasons heretofore explained, *see supra* p. 931, I reject plaintiff's liberty interest argument, and, because plaintiff has not identified any information or ideas which she has been precluded from receiving, I find her first amendment argument equally unconvincing.

■ Accordingly, plaintiff's claims must be evaluated under the rational relation standard. Under this standard, the proper inquiry is whether the regulations challenged by plaintiff are "so unrelated to the achievement of any combination of legitimate purposes" that I can only conclude that defendants, in promulgating the challenged regulations, acted irrationally. *Vance,* 440 U.S. at 97, 99 S.Ct. at 943; *see also Benner v. Oswald,* 592 F.2d 174, 181 (3d Cir.) (rational relationship test applies to state regulations), *cert. denied,* 444 U.S. 832, 100 S.Ct. 62, 62 L.Ed.2d 41 (1979).

■ Plaintiff's argument that the creation by defendants of the gifted student classification is irrational in light of the enabling legislation is not convincing as

---

**3.** Having concluded that plaintiff has neither a property nor a liberty interest in being placed in gifted education, I decline to address defendants' alternative argument that the process afforded plaintiff before denying her placement in a gifted education program was constitutionally adequate.

**4.** In *Rodriguez,* the Court suggested that the absolute denial of educational opportunity might provide a basis for finding an interfer-

ence with fundamental rights. 411 U.S. at 36–37, 93 S.Ct. at 1298–99. *See also Plyler v. Doe,* 457 U.S. 202, 223–24, 102 S.Ct. 2382, 2398, 72 L.Ed.2d 786 (1982) (subjecting to heightened scrutiny a state's denial of basic education to undocumented school-age children). However, this issue is not before me, as plaintiff does not argue that she has been denied access to a basic education.

either a logical or a factual matter. The enabling legislation requires the Board of Education to prescribe standards for the education of all exceptional children, Pa. Stat.Ann. tit. 24, § 13–1372(1), and defines exceptional children as those who "deviate from the average ... to such an extent that they require special educational facilities or services." *Id.* § 13–1371. I fail to see how it could be irrational for the Board of Education to conclude that children with high IQs "deviate from the average" and thus come within the purview of the enabling legislation. Moreover, since the creation of the gifted student classification by the Board of Education, the legislature has placed its imprimatur upon the provision of special education to gifted children. *See id.* § 13–1372(3); *Lisa H.,* 67 Pa.Commw. at 357 n. 6, 447 A.2d at 673 n. 6.

Plaintiff's remaining arguments are equally unavailing. Clearly, there are legitimate purposes to which defendants' policies bear a rational relation. Congress has found and declared that "the Nation's greatest resource for solving critical national problems in areas of national concern is its gifted and talented children." Gifted and Talented Children's Education Act of 1978, Pub.L. No. 95–561, § 901(b)(1), 92 Stat. 2292, 2292, *repealed by* Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, § 587(a)(1), 95 Stat. 357, 480. Surely, it is both rational and legitimate for Pennsylvania to provide special education to gifted children in order to develop the abilities of those students most likely to assume leadership roles in areas of endeavor which are intellectually demanding.[5]

This is not to say that one may not question the educational and sociological wisdom of defendants' policies, particularly if, as plaintiff suggests, these policies have a deleterious effect upon students who are not deemed gifted. However, that there are arguments against defendants' policies does not make them irrational for purposes of an equal protection or substantive due process analysis. *See, e.g., Vance,* 440 U.S. at 97, 99 S.Ct. at 943; *Exxon,* 437 U.S. at 124–25, 98 S.Ct. at 2213. Nor, even if there are better methods available, is it irrational for defendants to rely on IQ scores in making their determinations of giftedness. *See Student Doe v. Commonwealth of Pennsylvania,* 593 F.Supp. 54, 57 (E.D.Pa.1984). Therefore, I hold that, even construing the pleadings in the light most favorable to plaintiff, there is no set of facts that plaintiff might prove in support of her equal protection and substantive due process claims which would entitle her to relief.

An order granting defendants' motion for judgment on the pleadings will be entered.[6]

---

**5.** In a section entitled "[s]tatement of purpose," the Pennsylvania regulations governing special education provide that "[i]t shall be the policy of the Board [of Education] ... to provide exceptional school-aged persons with quality special education programs ... which will ultimately enable them to participate as fully as possible in appropriate activities of daily living." 22 Pa.Admin.Code § 13.2. Certainly, this purpose is legitimate, and providing special education to gifted students, while perhaps not compelled by this policy, is not inconsistent with it. At any rate, where, as here, there are plausible reasons

for the challenged action, my inquiry need go no further. *See United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980).

**6.** In their memorandum of law in support of their motion for judgment on the pleadings, defendants raised an abstention argument. However, defendants have since withdrawn that argument, and therefore I have not considered it.